J-S33014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEIFF KING | : | |
| | : | |
| Appellant | : | No. 3199 EDA 2019 |

Appeal from the Order Entered July 31, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0001627-2018

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 18, 2020**

Appellant, Keiff King, appeals from the Judgment of Sentence of life imprisonment plus fifteen to thirty years, entered July 31, 2019,[1] following a jury conviction of First-Degree Murder, Criminal Conspiracy to Commit First-Degree Murder, Endangering the Welfare of a Child ("EWOC"), and Conspiracy to Commit EWOC.[2]  We affirm.

We derive the following facts and procedural history from the trial court's Opinion, which are supported by the certified record.  **See** Trial Ct.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant purports to appeal from the Order of October 24, 2019, which denied his Post-Sentence Motion.  Appeal properly lies from his Judgment of Sentence entered July 31, 2019.  **See Commonwealth v. Dreves**, 839 A.2d 1122, 1125 n.1 (Pa. Super. 2003) (*en banc*) (explaining appeal properly lies from judgment of sentence). We have corrected the caption accordingly.

[2] 18 Pa.C.S. §§ 2502(a), 903, and 4304, respectively

Op., 1/17/20, at 1-25. T.S., the victim in this case, was the 4-year-old child of Appellant's girlfriend, Lisa Smith. Appellant began dating Smith in early 2017. Smith and T.S. regularly stayed at Appellant's home in Willow Grove. Appellant's other two children, his grandmother, and an 18-year-old cousin would also stay at the house. In the summer of 2017, Smith became pregnant with Appellant's child. Around this time, family members and caregivers began to notice signs of abuse on T.S.'s body.

For the next several months, numerous relatives continued to notice signs of abuse on T.S.'s body. In September 2017, due to concerns about T.S.'s wellbeing, the family members removed T.S. from Smith's care, placing him with his aunt. In January 2018, T.S. went back to live with Smith.

On January 22, 2018, Smith and T.S. were at Appellant's home when, at 9:30 AM, T.S. spilled his cereal. T.S. wet his pants while being confronted by Smith about the incident. As a result, Appellant and Smith forced T.S. into "the position" on the floor, which was a plank position, or the straight-arm push-up position, where he was forced to remain for long spans of time throughout the day. When T.S failed to hold the position, Smith and Appellant reprimanded and physically abused him by hitting him repeatedly with a flip-flop. In addition, Appellant hit T.S. on his buttocks with his bare hands two or three times, and with the flip-flop three or four times after T.S. removed his pants in preparation for these beatings because he was aware they were coming.

2

Following these beatings, Appellant and Smith put T.S. into a hot shower, causing first-, second-, and third-degree burns on his body. After the shower, T.S. was unable move. Smith dressed him and put him on the sofa where T.S. told Smith he was sleepy. Appellant and Smith then left the room to watch television in the bedroom.

Smith returned a short time later and found T.S. lying on the floor with his lips twitching and his eyes rolling back in his head. Appellant did not want an ambulance coming to the house so instead of calling 911 or taking T.S. to the hospital, Appellant called his aunt who was 20 minutes away.

Smith nevertheless wrapped T.S. in a coat, left the house, and called 911 from the corner of Coolidge and Columbia in Willow Grove. Officers would later discover Smith arrived at this intersection in order to execute her cover-up story. When the ambulance arrived, Smith handed T.S.'s limp body to the paramedics and walked away. The paramedics transported him to the hospital where he was pronounced dead on arrival. Neither Smith nor Appellant called the hospital to check on T.S.

Detective Richard Kondan and other police officers arrived at the corner of Coolidge and Columbia and discovered that Smith had returned to the corner. In response to the officers' questions, Smith provided inaccurate information regarding her prior whereabouts and how she had arrived at that location. However, she eventually directed the officers to Appellant's home as

3

her place of origin. Police officers then detained Smith and transferred her to the police station.

Detective Kondan went to Appellant's home where Appellant told him that Smith and T.S. had not been at his home that day. Appellant agreed to go with the detective to the police station to speak further.

The next day, Dr. Ian Hood performed an autopsy and ruled T.S.'s death a homicide. The autopsy revealed multiple injuries to T.S.'s body indicative of past and recent severe physical abuse, including 11 rib fractures in various stages of healing, head injuries, belt buckle beating scars, burns, pulpified tissue on his buttocks which caused shock, and organ damage.

On March 12, 2018, the Commonwealth arrested Appellant and charged him with Murder, Criminal Conspiracy to Commit Murder, and related offenses. A jury trial commenced on June 18, 2019.[3]

Several of T.S.'s relatives testified for the Commonwealth. Holly, the mother of T.S.'s half-sister, testified that she had observed injuries on T.S.'s back. When Holly confronted Smith, Smith told her that the injuries were the result of a rug burn she had inflicted on T.S. because he had peed on the toilet. N.T. 6/19/19, at 316-18. August and Brenda Pauline, Smith's mother and sister, testified regarding their observations of injuries on T.S.'s back and eye. *Id*. at 479-82. Brenda Pauline testified that T.S. told her that he had a

---

[3] The Commonwealth charged Smith with the same crimes as Appellant. She was tried separately.

4

black eye because Appellant had punched him. *Id*. at 504. Anthony Cross, T.S.'s paternal grandfather, testified that he also observed the injuries mentioned above and that Smith told him T.S. fell, which caused the black eye, and that she had dragged T.S. across a rug. *Id*. at 518-526.

Dr. Hood testified in detail regarding the autopsy results, stating that the injuries to T.S. had been caused by significant trauma, the swelling and bruising on T.S.'s back matched the sole of a flip-flop, and the pulpified flesh was caused by multiple beatings rendered with significant force. N.T. 6/18/19 at 82-100. Dr. Hood also testified that the autopsy revealed scars from injuries caused by a belt buckle a few months before the date of the autopsy. *Id.* He opined that T.S. died as a result of the cumulative beatings, burns, pulpified flesh, sepsis, and shock that T.S. experienced just before he died. *Id*. at 99.

The jury convicted Appellant of the above crimes. On July 31, 2019, the court sentenced Appellant to a term of life imprisonment without the possibility of parole for the Murder conviction, plus a consecutive term of 15 to 30 years' imprisonment for the EWOC convictions.[4]

Appellant timely filed Post-Sentence Motions challenging the sufficiency and weight of the evidence, as well as the discretionary aspects of his sentence, which the trial court denied. Trial Ct. Order, 10/24/19. Appellant

---

[4] On the count of Conspiracy to Commit Murder in the First Degree, Appellant was sentenced to a term of 20 to 40 years' incarceration to run concurrently with his life sentence. The EWOC sentences exceeded the aggravated range suggested in the sentencing guidelines.

timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion.

Appellant raises the following two issues on appeal:

1. Was the evidence sufficient to support the jury's finding of guilt on the charge of Murder in the First Degree?

2. Did the trial court abuse its discretion in sentencing Appellant to a total, aggregate sentence of not less than life in prison, without the possibility of parole, plus a consecutive fifteen (15) to thirty (30) years of imprisonment?

Appellant's Brief at 6 (some capitalization omitted).

**Sufficiency of the Evidence**

Appellant first challenges the sufficiency of the evidence supporting the First-Degree Murder conviction by contending that the Commonwealth failed to prove that T.S.'s death resulted from an intentional killing as required by 18 Pa.C.S. § 2502(a). *Id.* at 23.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). Our standard of review is, thus, *de novo* and our scope of review is plenary. ***Commonwealth v. Stotelmyer***, 110 A.3d 146, 149 (Pa. 2015).

"We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal

6

quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

To sustain a First-Degree Murder conviction, "the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with malice and specific intent to kill." *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015); 18 Pa.C.S. § 2502(a). "Section 2502 of the Crimes Code defines murder of the first degree as an 'intentional killing,'" which is defined as a "willful, deliberate and premeditated killing." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (citations omitted).

"When there is no direct evidence of intent to kill, the fact-finder must glean the intent from the act itself and all surrounding circumstances." *Commonwealth v. Simmons*, 662 A.2d 621, 629 (Pa. 1995) (citation omitted). A specific intent to kill may be proven by circumstantial evidence and may be inferred by a defendant's use of deadly weapon upon a vital part of the victim's body. *Commonwealth v. Hicks*, 156 A.3d 1114, 1124 (Pa. 2017). Where death results after a prolonged period of physical abuse, the Commonwealth need not present proof of a single, fatal blow to establish the

defendant acted intentionally in causing the victim's death. ***See, e.g., Commonwealth v. Powell***, 956 A.2d 406, 417-18 (Pa. 2018) (concluding that the evidence was sufficient to sustain a conviction for First-Degree Murder where the victim's body evidenced injuries inflicted over a period of months, including injuries inflicted over the course of a 12- to 24-hour period just prior to his death).

Appellant bases his claim of insufficiency on his observation that Dr. Hood testified that "none of [T.S.'s] injuries . . . in and of itself, would have been fatal," and that "the more recent injuries . . . would all have combined to produce the 'shock' that proved to be fatal." Appellant's Brief at at 23. Appellant argues that, because of this testimony, the Commonwealth "failed to establish, by proof beyond a reasonable doubt, that a first-degree murder did, in fact, take place on January 22, 2018" and that "Appellant acted with a specific intent to kill T.J.]." ***Id.***

In support of his bald conclusion, Appellant provides no citations to the record, no citation to the statute defining First-Degree Murder, no citation or discussion of case law pertaining to the *mens rea* element of this crime in support of his argument, and no legal analysis beyond his conclusory statements. These omissions violate our appellate briefing rules and severely hamper our review. ***See*** Pa.R.A.P. 2119(a) and (c) (briefing requirements); ***see also Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa. Super. 2015) (finding the appellant's claim waived for failing to comply with

8

requirements of Pa.R.A.P. 2119). Due to these significant briefing defects, we conclude this claim is waived.

Even if Appellant had not waived this claim, we would conclude that Appellant's contention—that the Commonwealth failed to present evidence sufficient to establish that he had the specific intent to kill T.S—is meritless.

In addressing Appellant's sufficiency challenge, the trial court reiterated in detail the evidence presented by the Commonwealth. *See* Tr. Ct. Op., 1/17/2020, at 3-13. The court specifically noted that the evidence showed that on January 22, 2018, "Appellant and Smith subjected [T.S.] to prolonged malicious torture and ultimately killed him in an attack of such ferocity that Dr. Hood likened his injuries and [the] impact upon his body to having been crushed as if from a building collapse. From those facts, intent to kill can be inferred." *Id*. at 15. The trial court also noted that Appellant's failure to call for help when T.S. exhibited signs of distress on January 22, 2018, further demonstrated that Appellant's specific intent to kill T.S. We agree.

Reviewing the record evidence and all reasonable inferences derived therefrom in the light most favorable to the Commonwealth, we conclude that the evidence of T.S.'s extensive injuries, resulting from months of abuse, and Appellant's intentional and brutal actions on January 22, 2018, that directly caused T.S.'s death, support the jury's reasonable inference that Appellant acted with the specific intent to kill T.S. Thus, as a matter of law and fact, we

conclude that the Commonwealth presented sufficient evidence to support the jury's verdict finding Appellant guilty of First-Degree Murder.

**Discretionary Aspect of Sentence**

Appellant also challenges the discretionary aspect of his sentence. He contends, *inter alia*, that the term of 15 to 30 years' incarceration imposed for the EWOC and Conspiracy to EWOC convictions is "unduly harsh and excessive" and "clearly unreasonable." Appellant's Brief at 10, 27.[5] Appellant avers that the sentencing court failed to consider properly (1) his history and characteristics; (2) the information contained in the pre-sentence investigation ("PSI") report; and (3) the sentencing guidelines. He further contends that the court put too much weight on the nature and circumstances of the offense. *Id.* at 10, 12-13.

Preliminarily, we note that there is no absolute right to appeal when challenging the discretionary aspect of a sentence. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). Before we may address the merits of such a challenge, we conduct a four-part analysis and determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify

---

[5] The aggravated range sentence suggested by the sentencing guidelines for Appellant's first-degree felony EWOC conviction is 18 to 25 months' incarceration. ***See*** N.T. Sentencing, 7/31/19, at 8. For a Conspiracy to EWOC conviction, the aggravated range sentence is 12 to 20 months' incarceration. ***See id.*** The court sentenced Appellant to 10 to 20 years' incarceration for EWOC, and 5 to 10 years' incarceration for Conspiracy. ***Id.*** at 18.

sentence; (3) whether the appellant's brief contained a Pa.R.A.P. 2119(f) statement; and (4) whether there is a substantial question that the sentence appealed from is inappropriate under the Sentencing Code. ***Id.***

Whether a substantial question has been raised regarding discretionary sentencing is determined on a case-by-case basis. ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Glass***, 50 A.3d 720, 727 (Pa. Super. 2012) (citation omitted).

Appellant timely filed his Notice of Appeal after the reinstatement of his appeal rights, preserved his challenge in a Post-Sentence Motion, and included a Rule 2119(f) Statement in his Brief. Thus, we must next determine whether Appellant has raised a substantial question.

In his Rule 2119(f) Statement, Appellant asserts that his sentence is manifestly excessive and imposed without consideration of the suggested Sentencing Guidelines. ***See*** Appellant's Brief at 13. Such claims raise a

11

substantial question. **Glass**, **supra** at 727. Therefore, we will review the merits of his challenge to the EWOC and Conspiracy sentence.[6]

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal without a manifest abuse of that discretion. **Commonwealth v. Hess**, 745 A.2d 29, 31 (Pa. Super. 2000). To constitute an abuse of discretion, the sentence must either exceed the statutory limits or be manifestly excessive; it is not shown merely by an error in judgment by the court. **Commonwealth v. Mouzon**, 828 A.2d 1126, 1128 (Pa. Super. 2003). "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Id.**

In considering whether a sentence is manifestly unreasonable, the appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure various factors such as the nature of the crime, the defendant's character, and the display of remorse, defiance, or indifference. **Commonwealth v. Ellis**, 700 A.2d 948, 958 (Pa. Super. 1997). The imposition of consecutive rather than concurrent sentences

---

[6] Appellant also references the life sentence imposed for his Murder conviction in his discussion regarding the discretionary aspect of the sentence. Appellant's Brief at 24, 25-26, 29. He later correctly acknowledges that the life sentence is statutorily mandated and not subject to the sentencing court's discretion. **Id**. at 26. We, thus, address Appellant's challenge only as it pertains to the sentences imposed consecutive to the life sentence for his EWOC and Conspiracy to EWOC convictions.

is within the sound discretion of the trial court. . *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) (citing 42 Pa.C.S. § 9721 and cases).

In determining whether a sentence is reasonable, an appellate court should consider: (1) the nature and circumstance of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; and (4) the guidelines promulgated by the commission. *Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa. 2007) (citing 42 Pa.C.S. § 9781(d)).

Where a PSI report exists, an appellate court shall presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). "Having been fully informed by the [PSI] report, the sentencing court's discretion should not be disturbed." *Id.*

When a sentencing court chooses to depart from the guidelines, it must "demonstrate on the record, as a proper point, its awareness of the sentencing guidelines" and articulate its reasons for deviating therefrom. *Commonwealth v. Durazo*, 210 A.3d 316, 320 (Pa. Super. 2019) (citations omitted). Generally, in deviating upward from the guidelines,

> it is impermissible for a court to consider factors already included within the sentencing guidelines as the *sole* reason for increasing . . . a sentence to the aggravated . . . range.  However, trial courts are permitted to use factors already included in the guidelines if

13

they are used to supplement other extraneous sentencing information.

*Commonwealth v. Clemat*, 218 A.3d 944, 960 (Pa. Super. 2019) (internal citation and quotation marks omitted; emphasis in original). Additionally, "[t]he focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather, upon how the present case deviates from what might be regarded as a 'typical' or 'normal' case of the offense under consideration." *Commonwealth v. Fullin*, 892 A.2d 843, 848 (Pa. Super. 2006) (citation omitted).

Here, at the sentencing hearing, the court stated that it had considered numerous factors, including the sentencing guidelines, the PSI report, the length of the abuse suffered by T.S., Appellant's lack of remorse, and his refusal to seek medical attention for T.S.  N.T. Sentencing, 7/31/19, at 16-18.  With respect to the reasons for deviating above the sentencing guidelines, the court stated:

> The sentences for [EWOC]and [C]onspiracy are outside of the sentencing guidelines, a deviation from the sentencing guidelines. And the reason for that is, first, the brutality of these crimes from long-term child abuse over many months have endangered the life of this child to the absolutely grotesque actions that led to his death.  These are among the most severe and violent acts that could possibly violate these statutes, and a lengthy consecutive sentence at the highest level is warranted.
>
> Further, the [c]ourt finds that the defendant poses a clear risk of harm to the community specifically to children, and the [c]ourt will impose this sentence to ensure the protection of the community.

Third, the [c]ourt notes the defendant's utter lack of remorse and total indifference to his crimes.

And, finally, the [c]ourt finds that any lesser sentence on these acts would depreciate the seriousness of this absolutely horrendous crime. These multiple acts over many months rendered an innocent child physically and emotionally broken and then dead.

N.T. Sentencing, 7/31/19, at 19. ***See also*** Order containing Written Reasons for Deviation above Sentencing Guidelines, dated 7/31/19.

Appellant avers that the sentencing court "simply reiterate[ed] the nature and extent of the injuries inflicted upon the victim [thus] ignor[ing] the fact that these very same considerations formed the basis for the charge of Murder[.]" Appellant's Brief at 27. He also contends that the trial court failed to consider adequately Appellant's "history and characteristics," his rehabilitative needs, and the information in the PSI report. ***Id***. at 27-28. We disagree.

Our review of the sentencing transcript reveals that the sentencing court explicitly acknowledged the PSI report, which included, among other things, Appellant's "history and characteristics" and his rehabilitative needs. **See** N.T. Sentencing at 16. The court also observed that Appellant explained his attitude about his abuse of T.S. when he told the pre-sentence investigator that he "was raised on beatings worse than that." ***Id***. at 17. In further explaining its reasons for concluding that the extensive, long-term abuse perpetrated by Appellant deviated from what is normally seen in an EWOC case, the court stated:

> [T]he months of prolonged abuse of this child . . . reflect some of the most unimaginable violence to an innocent child that one can imagine[,] from months of repeated beatings and torture to the brutal attack that killed T.S. . . . . Every act and every omission reflects cruelty and brutality that is just unimaginable. There are many aspects of the [PSI report] that were interesting to consider, but overall when I read this information, I am left to conclude that this defendant utterly lacks remorse, completely ignores his responsibility to this child, and his actions reflect . . . an indifference and a defiance to both what he did and to the system.

N.T. Sentencing at 16-17.

In light of the court's acknowledgment and review of the PSI report and the sentencing guidelines, we conclude that the court properly considered the history and characteristics of the defendant and his rehabilitative needs. In addition, we agree with the sentencing court's conclusion that the gravity of the abuse perpetrated by Appellant, the impact on the victim, and Appellant's normalization of his cruelty showing a complete lack of remorse, support the imposition of a sentence beyond the aggravated range, to be served consecutive to his life sentence for the protection of the public.

As we discern no abuse of the sentencing court's exercise of its discretion, we conclude Appellant's sentencing challenge warrants no relief. Accordingly, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.

16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/18/2020