2019 PA Super 150

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ORLANDO FRANCISCO DURAZO, | |
| Appellant | No. 2658 EDA 2018 |

Appeal from the Judgment of Sentence Entered August 8, 2018
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0005686-2017

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and STEVENS, P.J.E.*

OPINION BY BENDER, P.J.E.:                    **FILED MAY 07, 2019**

Appellant, Orlando Francisco Durazo, appeals from the judgment of sentence of a term of 10 to 20 years' imprisonment, imposed after he pled guilty to one count of aggravated assault.[1]  Appellant solely challenges the discretionary aspects of his sentence.  We affirm.

The record establishes that at the time of the incident which led to Appellant's guilty plea, M.P. and her infant son, L.S. (the victim), were staying with M.P.'s cousin and her boyfriend (Appellant) at their home located in Allentown, Pennsylvania.  On November 6, 2017, M.P. left the home to take her dog for a walk.  She was gone for approximately 45 minutes and left

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702(a)(9).

Appellant to care for L.S., who was five weeks old at the time. When M.P. returned, L.S. was sleeping and Appellant went to work. M.P. did not notice anything wrong at that point.

> [A]round 3:00 p.m.[,] [M.P.] went to wake the baby up and the baby was noticeably irritable and so she let him sleep a little bit longer.
>
> Around 5:15[,] she woke the baby up and noticed that [his] arms … [were] twitching and the baby was irritable.
>
> Now, she had been primarily breast-feeding…. The baby wasn't latching.
>
> She went to the hospital that night and, unfortunately, the hospital chalked it up to breast feeding issues, [and told M.P. to] take the baby home.
>
> The baby [went] home. At approximately 6:00 a.m.[,] [M.P.] [woke] up her child and he [was] … seizing all throughout his body, his legs, his arms, every part of him is seizing. And he [was] becoming more lethargic and … refusing to eat.
>
> She immediately rushe[d] him to the emergency room where … the doctors there [saw] the baby and immediately [flew] him to St. Christopher's and he [was] considered a level one trauma patient.
>
> And at St. Christopher's[,] they did numerous scans and saw that he had extensive head, neck and eye injuries. He had subdural and subarachnoid hemorrhages. He had cerebral contusions. He had an injury to the neck and retinal hemorrhages.
>
> …
>
> Detective Murray[,] on November 8th of 2017[,] interviewed [Appellant] at which point he said he was babysitting [L.S.] and he did admit to grabbing [L.S.] by the hands and feet and throwing [L.S.] on the ottoman area, which was in front of him, twice almost[,] he said[,] like a wrestling move.
>
> When he threw [L.S.] the second time[,] [Appellant] said that he looked at the victim and he was knocked out, at which point he left him on the ottoman[,] and when [M.P.] came [home,]

she thought he was sleeping. [Appellant] was subsequently arrested.

N.T. Plea, 6/28/18, at 5-8. Appellant verbally admitted to the foregoing events as presented by the Commonwealth at the guilty plea hearing. **See id.** at 8.

Appellant pled guilty to aggravated assault on June 28, 2018. On August 8, 2018, the court imposed Appellant's sentence. Appellant filed a timely motion to reconsider his sentence, which was denied. He then filed a timely notice of appeal, as well as a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents one issue for our review: "Did the trial court abuse its discretion in imposing an unreasonable sentence outside the sentencing guidelines when the trial court's reasons for its diversion from the guidelines do not support such an aggravated sentence?" Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant's single issue challenges the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence

> appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citations and internal quotations omitted).

Here, the record clearly reflects that Appellant filed a timely notice of appeal, properly preserved his claim in his post-sentence motion, and included a separate, concise Rule 2119(f) statement in his appellate brief in compliance with the Pennsylvania Rules of Appellate Procedure. Thus, we proceed to determine whether Appellant has raised a substantial question to meet the fourth requirement of the four-part test outlined above.

Appellant contends that his sentence is manifestly unreasonable and that the trial court failed to state adequate reasons for imposing a sentence that falls outside the standard range of the sentencing guidelines. Based on the argument presented in Appellant's Rule 2119(f) statement, and the case law on which he relies, we conclude that Appellant has presented a substantial question for our review. ***See Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa. Super. 2008) (concluding that a substantial question may exist where the appellant contends that the sentencing court exceeded the recommended range in the sentencing guidelines without providing an adequate basis). Accordingly, we will review the merits of his claim.

Our standard for reviewing a claim challenging the discretionary aspects of a sentence is well-settled:

- 4 -

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014) (quoting

*Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa. Super. 2007)).

> When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it [is] not bound by the Sentencing Guidelines. *Commonwealth v. Yuhasz*, 592 Pa. 120, 923 A.2d 1111, 1118 (2007) ("It is well established that the Sentencing Guidelines are purely advisory in nature."); *Commonwealth v. Walls*, 926 A.2d 957, 965 (referring to the Sentencing Guidelines as "advisory guideposts" which "recommend … rather than require a particular sentence"). The court may deviate from the recommended guidelines; they are "merely one factor among many that the court must consider in imposing a sentence." *Yuhasz*, 923 A.2d at 1118. A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa .Super. 2001). When a court chooses to depart from the guidelines[,] however, it must "demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines." [*Id.*] Further, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S.[] § 9721(b).

*Sheller*, 961 A.2d at 190. The requirement that the court provide a

contemporaneous written statement is satisfied "when the judge states his

reasons for the sentence on the record and in the defendant's presence."

*Antidormi*, 84 A.3d at 760 (internal quotation marks and citation omitted).

*See also Commonwealth v. Lawson*, 650 A.2d 876, 881 (Pa. Super. 1994).

- 5 -

When reviewing a sentence outside of the guidelines, the essential question is whether the sentence imposed was reasonable. *Sheller*, 961 A.2d at 190; *Walls*, 926 A.2d at 963. "The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds … the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). In determining whether the sentence is reasonable, an appellate court should consider the following factors:

(1)     The nature and circumstance of the offense and the history and characteristics of the defendant.

(2)     The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3)     The findings upon which the sentence was based.

(4)     The guidelines promulgated by the commission.

*Walls*, 926 A.2d at 963 (quoting 42 Pa.C.S. § 9781(d)). "A sentence may be found unreasonable if it fails to properly account for these four statutory factors … [or] if the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing." *Sheller*, 961 A.2d at 191 (internal quotation marks and citation omitted).

In the instant matter, the trial court sentenced Appellant to 10 to 20 years' imprisonment, which was beyond the aggravated range of the sentence guidelines, but within the statutory limits. The trial court provided the

following detailed explanation of its sentence in its order denying Appellant's

motion for reconsideration:

> This [c]ourt considered all the required statutory factors in sentencing [Appellant]. Indeed, in imposing [Appellant's] sentence, this [c]ourt considered the "protection of the public, the gravity of the offense as it relates to the impact on the victim and the community, [Appellant's] rehabilitative needs, and the sentencing guidelines." 42 Pa.C.S.[] § 9721(b); **Commonwealth v. Feucht**, 955 A.2d 377, 383 (Pa. Super. 2008).
>
> Prior to sentencing, this [c]ourt reviewed the Pre-Sentence Investigation Report [("PSI")] prepared on August 3, 2018. The [c]ourt was aware of all of the information contained therein, including [Appellant's] lack of a prior record, [Appellant's] employment history, the recommendation of the [PSI] author, and the assistance that [Appellant] had previously provided to the victim's mother, [M.P.]. Indeed, this [c]ourt did not fail to consider mitigating factors. **Commonwealth v. Rhoades**, 8 A.3d 912, 919 (Pa. Super. 2010) (stating that where the sentencing court had the benefit of a [PSI], it may be assumed that the sentencing court was aware of all relevant information regarding a defendant, including any mitigating factors); **Commonwealth v. Devers**, 519 Pa. 88, 546 A.2d 12 (1988) (holding that where a [PSI] exists, there is a presumption that the sentencing judge was aware of and adequately considered information relevant to the defendant's character, as well as any mitigating factors). In addition, this [c]ourt viewed the videotaped reenactment of the crime, as well as heard testimony from Dr. Deborah Esernio-Jenssen, an expert in child abuse pediatrics, that the baby suffered and continues to suffer immensely due to the extreme nature of the injuries, and that the baby will have significant long term physical, social, emotional, and behavioral disabilities.
>
> This [c]ourt articulated the reasons for the imposition of a maximum sentence: (1) the five week old victim sustained *extreme* injuries as a result of [Appellant's] actions; (2) the criminal conduct of [Appellant] caused harm to the five (5) week old baby while he was in a caregiving role; (3) a lesser sentence would depreciate the gravity and seriousness of the offense; and (4) confinement is more likely to contribute to [Appellant's] rehabilitation than any other form of supervision.

> Using its discretion, this [c]ourt imposed a sentence that complied with the negotiated plea agreement, and was within the guidelines and within the law. Accordingly, [Appellant's] argument is baseless and [Appellant's] [p]ost[-s]entence [m]otion is denied.

Trial Court Order, 8/27/18, at 3 n.1 (emphasis in original).

As noted by the trial court, prior to sentencing, it heard testimony from Dr. Debra Esernio-Jenssen, regarding the severity of L.S.'s injuries, as well as a statement from M.P. regarding the impact that Appellant's actions have had not only on her child, but on her as well. Dr. Esernio-Jenssen explained in great detail the injuries to L.S. that were observed while he was being treated at St. Christopher's. She reported that an MRI revealed bleeding on top of his brain, "a sign that the child's brain went through rotational cranial acceleration/deceleration," and that "the bridging veins that connect from inside the skull onto the brain itself were stretched and torn and they bled." N.T. Sentencing, 8/8/18, at 8. A neck MRI further indicated a significant separation between the first and second cervical vertebrae, which is indicative that the "head and neck were put through extreme forces of either – or a combination of both – hyperflexion, meaning like the head going forward, hypertension, meaning the head going back, or lateral flexion, meaning the head going to either side." *Id.* at 9. Dr. Esernio-Jenssen observed:

> Those type[s] of injuries, other than abusive head trauma, are seen when children are unrestrained in a car, in a motor vehicle crash; or they're a pedestrian in a motor vehicle crash; or they're being carried by a caregiver and are in a motor vehicle crash as a pedestrian. They're extreme forces to cause these injuries.

*Id.* at 9-10.

As to L.S.'s progress since the incident, Dr. Esernio-Jenssen reported that:  L.S. is moving the right side of his body, but that his tone is still decreased compared to the left; he has central vision but cannot see peripherally on either side; he is able to sit but is not able to creep, crawl, or pull himself up to stand; he has made little progress with verbal skills; and he lacks object permanency—a skill typically developed between four to seven months of age and L.S. is ten months of age.  *Id.* at 12-13.  "But what is most devastating is that his head circumference growth is basically … ceasing."  *Id.* at 14.  L.S.'s head circumference was measuring below the 0.01 percentile, which Dr. Esernio-Jenssen explained is the most significant factor in determining long-term abilities.  "Cessation of brain growth is the number one determinant of what this child is going to be able to do as he gets older…."  *Id.*  Dr. Esernio-Jenssen concluded that:

> Because [L.S.] was so young when this happened[,] he is the most vulnerable for having long-term sequelae….
>
> It is very clear that because of his brain injury, the fact that he presented with seizures, which is a bad prognostic sign, the fact that he presented with … retinal hemorrhages, which is also a bad prognostic sign, [L.S.] is going to have significant disabilities long term – not only cognitive, behavioral, social, emotional – for his future.

*Id.* at 15.

Moreover, M.P. read a prepared statement on the record at the sentencing hearing, "to be the voice for [L.S.] who is still too young to speak for himself and to speak for the family that has been dramatically changed in a devastating way," due to Appellant's actions.  *Id.* at 19.  M.P. described L.S.

prior to the incident as a "vibrant, happy, thriving little infant…," "a very healthy baby, with no medical issues." *Id.* "Tragically, due to the injuries that [L.S.] suffered at the hands of [Appellant,] he will never be the same baby." *Id.* M.P. explained that the left side of L.S.'s brain has been severely damaged, that multiple therapists are working with L.S. several times a week, and that doctors have indicated that the extent of his deficits will remain unclear until he gets older. *Id.* at 20.

> [L.S.] is the main victim who has been most impacted…. But, unfortunately, he's not the only victim and not the only one left with devastating consequences. Not knowing the level of struggle [L.S.] will face in [the] future but knowing that there will be struggles with his future … is like a form of torture for me to live with.
>
> The constant worry and reminder of what happened to [L.S.], it is so scary and heartbreaking to live with these facts and the thought of the possibility of … one day having this little angel boy [] ask me why he is the way he is[,] or why certain tasks are so hard for him. This crushes my heart all over again. It takes my breath away.
>
> …
>
> As [L.S.'s] mom[,] I cannot even begin to explain and put into words the heartache, the guilt, the anger, the sadness, the pain, and the fear I feel on a regular basis.

*Id.* at 22-23. M.P. also expressed that their family has been "completely torn apart" as a result of Appellant's actions. She "lost an aunt who is more like a mother" and "a cousin[] who is more like a sister and my best friend…." *Id.* at 24.

Finally, after hearing all of the foregoing testimony, the court addressed Appellant from the bench:

It's a very troubling case…. Motive is never a part of a criminal charge because we're not supposed to be able to jump into a mind like yours and figure out why people like you do the things you do.

You were so matter of fact in your recitation on the video of, "I did this. I did that. I did this. I did that."

And as [M.P.] expressed herself, not a tear, not watching the video, not listening to Dr. [Esernio-]Jenssen describe the significance of the injuries, not while [M.P.] described her pain and that of her family, and the division within the family this has caused.

And, most importantly, that 15 minutes before you were the primary caregiver of that child, [L.S.'s] future was the same as any other healthy-born one-month-old baby. And you took all that away in an instant. All of it.

When you hear experts, doctors, talk about and use terms like "severe[,"] "extreme[,"] "significant[,"] those mean something. It's not a "maybe this child will suffer in the future[."] It is, "This child will suffer forever[."]

That baby was completely reliant, couldn't do anything by himself. You took it all away.

The sentence is that you pay the costs of prosecution….

Undergo imprisonment for not less than ten nor more than 20 years, State….

This sentence is a maximum sentence as a result of the extreme severity of the injuries to the victim.

The criminal conduct of [Appellant] caused harm to a five-week old baby while he was in a caregiving role. A lesser sentence would depreciate the seriousness of this crime.

Confinement is absolutely more likely to contribute to the rehabilitation of [Appellant] than any other form of supervision.

N.T. Sentencing at 39-41.

It is clear from the trial court's statement that it considered all the requisite factors, including the nature and circumstances of the offense, the

- 11 -

recommended guideline range, the gravity of the offense, and the rehabilitative needs of Appellant, when fashioning its sentence. *See* 42 Pa.C.S. § 9781(d). Moreover, the trial court had a PSI at the time of sentencing and clearly had an opportunity to generally consider and observe Appellant's history and characteristics. *See Sheller*, 961 A.2d at 192. Thus, we find no abuse of discretion.

Appellant contends that the reasons given by the trial court for the imposition of a maximum sentence were inadequate, and Appellant argues that factors such as the age of the victim have already been taken into account by the legislature. Appellant's Brief at 16-18 (citing 18 Pa.C.S. § 2702(a)(9) (providing that a person 18 years of age or older is guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a child less than 13 years of age")). However, to the extent that the statute delineates a crime for assault on a child under the age of 13, nothing prevents the court from considering the extreme age difference of the victim, such as in the present case where the victim was a 5-week-old, defenseless baby. Moreover, even if the trial court relied on factors that were subsumed within the guideline recommendation, such as the age of the victim, we discern no abuse of discretion. *See Commonwealth v. Smith*, 673 A.2d 893, 896-97 (Pa. 1997) (determining that even if a sentencing court relies on a factor that should not have been considered, there is no abuse of discretion where the court provides significant additional support for its departure from the sentencing guidelines). *See also Commonwealth v. P.L.S.*, 894 A.2d

120, 133 (Pa. Super. 2006). Here, the trial court expressly cited proper factors that it took into consideration when determining the appropriate sentence for Appellant, including the impact the crime had on relatives of the victim. *See Sheller*, 961 A.2d at 192.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/19