J-S24019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STARMARIE CRYSTAL OWENS | : | |
| | : | |
| Appellant | : | No. 1338 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 20, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006684-2022

BEFORE:   BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED: October 2, 2024**

Starmarie Crystal Owens ("Owens") appeals from the judgment of sentence imposed after she pleaded guilty to receiving stolen property, forgery, and access device fraud.[1]  We affirm in part, vacate the judgment of sentence, and remand for compliance with 18 Pa.C.S.A. § 1106(c)(2).

We summarize the factual history of this appeal from the affidavit of probable cause.  **See** Criminal Complaint, 8/11/22, Affidavit of Probable Cause, at 3-7; **see also** N.T., 6/1/23, at 11-12 (indicating that the parties relied on the affidavit of probable cause as the basis for Owens's guilty plea); Trial Court Opinion, 1/24/24, at 2-5.  While settling the estate of Dora Mae

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3925, 4101, 4106.  The Commonwealth graded these charges as third-degree felonies.  **See** Information, 10/27/22, unnumbered at 1-2

Gordon ("Gordon"), Sharon and Nikki Reives (collectively, "the Reiveses") discovered suspicious activities in Gordon's bank account, including payments to an unknown property management company and charges atypical for an 84-year-old, who lived in New York, with no children or businesses. *See* Criminal Complaint, 8/11/22, Affidavit of Probable Cause, at 3. Nikki Reives inquired with the property management company and discovered Gordon's account had been used for Owens's lease of space in the Park Building in Pittsburgh. *See id*. at 3, 6-7. After the property management company advised Owens of the inquiry, Owens contacted Nikki Reives and admitted she had used Gordon's account. *See id*. at 3. There was no indication that Gordon ever met Owens or allowed Owens to use the account. *See id*. at 3-4.

Detective Kevin P. Flanigan ("Detective Flanigan"), with the Allegheny County District Attorney's Office, began an investigation after receiving a complaint from the Reiveses. *See id*. at 3. Detective Flanigan noted Owens listed her employers as home care agencies and she represented herself online as a nail salon owner and a notary public. *See id*. at 3, 6-7. Detective Flanigan discovered Owens had cared for Emma Scruggs ("Scruggs") in Aliquippa, Beaver County. *See id*. at 3, 5-6.[2] Detective Flanigan interviewed Scruggs, who confirmed Owens used to take care of her and had access to her mail and personal information. *See id*. at 3, 5. Gordon had sent Scruggs

_____

[2] The affidavit of probable cause refers to an "Emma Suggs" as well as an "Emma Scruggs." It appears that "Suggs" and "Scruggs" refer to the same person as the charges only involved offenses committed against Gordon's estate and Scruggs.

checks, including one for Scruggs's ninetieth birthday, which Scruggs did not receive. *See id*. at 3. The detective also discovered check #458 from Gordon's account cleared twice, once for $600, and once for $700. *See id*. at 4. Check #458 was paid to the order of Scruggs and appeared to be endorsed by Scruggs as payable to Owens. *See id*. Copies of check #458 showed alterations that, among other things, increased the amount from $600 to $700 and changed the date of the check. *See id*. The detective showed Scruggs copies of check #458, and Scruggs stated she had not previously seen the check and the signature endorsing the check to Owens was not hers.[3] *See id*. at 4-5.

After check #458 cleared Gordon's account for the second time Gordon's bank account suffered the fraudulent transfers and charges. *See id*. at 4. Detective Flanigan tracked transfers from Gordon's account to Owens's credit union account. *See id*. at 4, 6. The detective also traced payments from Gordon's account to the property management company, as well as other utilities, bills, and debts, linked to Owens. *See id*. at 6-7. The detective concluded Owens obtained Gordon's account information from personal checks Gordon sent Scruggs, forged check #458, and stole over $62,000 from Gordon's account. *See id*. at 7.

_____

[3] It appears that Owens maintained a presence in both Beaver and Allegheny Counties, as she had a listed address in Beaver County, and signed a lease for space in Pittsburgh. *See* Criminal Complaint, 8/11/22, Affidavit of Probable Cause, at 5-6.

The detective filed a complaint charging Owens with numerous offenses. Owens and the Commonwealth came to a plea agreement as to the charges, and Owens entered a guilty plea to receiving stolen property from Gordon's estate (count 3), forgery of check #458 to defraud Scruggs (count 5), and access device fraud (count 8). *See* N.T., 6/1/23, at 5; *see also* Information, 10/28/22, unnumbered at 3. There was no agreement as to sentencing. *See* N.T., 6/1/23, at 7. After accepting Owens's plea, the trial court ordered a presentence investigation report ("PSI") and scheduled sentencing for August 30, 2023. Owens did not appear at the August 2023 hearing, and her counsel had no explanation for her absence. *See* N.T., 8/30/23, at 2.

The trial court issued a bench warrant, after which Owens appeared for sentencing on September 20, 2023. At the beginning of the hearing, the trial court noted it had received and reviewed a twenty-five-page PSI in its entirety. *See* N.T., 9/20/23, at 2-3. The Commonwealth presented the court with a letter from Sharon Reives, and indicated the Reiveses' "deep disappointment" and desire for "retribution." *Id*.; *see also* Commonwealth's Exhibit 1. The Commonwealth did not argue for a particular sentence, and the parties agreed to restitution of $62,798.28. *See* N.T., 9/20/23, at 5-6. During a discussion concerning Owens's failure to appear for sentencing in August 2023, Owens asserted she was hospitalized due to a kidney condition. *See id*. at 6. Owens stated she left messages for her counsel, which counsel did not receive. *See id*. at 6-7. When the trial court asked if Owens had documents to confirm her

- 4 -

hospitalization, Owens responded she was taken into custody and did not have documentation. *See id*. Owens noted she still worked for a home care agency, under supervision, and was supposed to have surgery "within the next couple of weeks." *Id*. at 9. Owens's counsel argued for a "non-jail sentence," emphasizing Owens had a prior record score of zero, took responsibility for her actions by pleading guilty, was remorseful for her conduct, and cared for a deaf eight-year-old son as a single parent. *Id*. at 8. Counsel indicated Owens saved $4,000 toward restitution and asserted Owens could not pay if incarcerated. *See id*. Owens apologized for her actions. *See id*. at 9.

The trial judge, when imposing sentence, stated:

[Owens's] claim about hospitalization and so forth are not credible to this [c]ourt. It could be true, I suppose, but I'm not convinced, particularly in light of the fact that [Owens] didn't make what I would consider to be any kind of reasonable effort to get ahold of [her counsel,] . . . coupled with the fact that the [PSI] indicates numerous times that bench warrants were issued for [Owens] for appearances in Beaver County -- bench warrants issued over long periods of time in Beaver County for various citations. [Owens] did not respond or show up. She has had issues in Prince George's County, Maryland. She had other thefts in her past, presumably not anywhere near the magnitude of this one.

The sentencing guidelines in this case I find to be unreasonably low, given the facts in this case. [Owens] preyed upon an elderly victim. [Owens] was a notary public, as I read the [PSI] . . .

* * * *

She was getting licensed by the State for matters that involved verifying honesty and identification and things like that, and she was ripping off an elderly woman of her life savings . . ..

*Id*. at 9-11.  The judge imposed a sentence of eighteen to forty-eight months of imprisonment for receiving stolen property (count 3) and explained:

> This is above the guideline range.  It is above the aggravated guideline range.[4]   [Owens] used her skills to dissipate over $60,000 from an elderly member of our community, perhaps the community of the United States, Allegheny County[5]; her use of her skills to do it, manipulating documents, all the while representing herself as someone trusted and being a notary public. [Owens] has to face substantial consequences for doing that.  She has a history of not showing up to court.
>
> The [c]ourt finds her explanation for not even showing up for the [previously scheduled sentencing hearing] in this case to be questionable, and demonstration that [Owens] did not embrace the seriousness of her conduct.

*Id*. at 11-12.  The court also imposed consecutive terms of five years of probation on each of the remaining counts,[6] resulting in an aggregate sentence of one-and-one-half to four years of imprisonment followed by ten years of probation.  The trial judge informed Owens the sentence was

---

[4] According to the 7th edition sentencing guidelines form in the record,  Owens had a prior record score of zero, and the offense gravity score was five.  The standard range minimum sentence was from restorative sanctions to nine months, plus or minus three months for aggravating or mitigating circumstances.

[5] We note count 3 involved receiving stolen property from Gordon's estate. Gordon had lived in New York prior to her death.  The estate appears to have been formed in North Carolina.  However, the trial court's generalization as to the location of the victim of count 3 does not affect the disposition of this appeal.

[6] When imposing one of the probationary sentences at the sentencing hearing, the trial court inadvertently referred to a charge of fraud at count 7, instead of the charge of access device fraud at count 8.  *See* N.T., 9/20/23, at 11. However, the sentencing order correctly imposed the sentence on count 8 and indicated the withdrawal of count 7.  *See* Order, 9/20/23, at 1.

"perhaps the harshest sentence I've ever issued in a case like this," but reasoned the facts of the case warranted the sentence. *Id*. at 13.

With respect to restitution, the trial court indicated that it imposed the consecutive ten-year probationary term to allow Owens "sufficient time to repay" Gordon's estate. *See id*. at 12-13. Although the parties agreed to the amount of restitution, the court did not establish a payment schedule at the sentencing hearing or otherwise specify the method of paying restitution. *See* 18 Pa.C.S.A. § 1106(c)(2) (requiring a court to state the amount and method of paying restitution).[7] Owens filed a timely post-sentence motion to modify the sentence, which the trial court denied. Owens timely appealed, and she and the trial court complied with Pa.R.A.P. 1925.

Owens presents the following issue for our review:

Whether the trial court abused its discretion in failing to apply all relevant sentencing criteria, including the protection of the public, the gravity of the offense, and . . . Owens'[s] character and rehabilitative needs, as required by 42 Pa.C.S.A. § 9721(b) . . .?

Owens's Brief at 6 (some capitalization omitted).

Owens's sole issue on appeal implicates the discretionary aspects of sentencing, specifically, the trial court's decision to sentence outside the guidelines for receiving stolen property. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Durazo*, 210 A.3d 316, 319 (Pa. Super. 2019) (citation

---

[7] The sentencing order indicated that restitution was "imposed as part of the sentence" and "due immediately unless the court established a payment plan." *See* Order, 9/20/23, at 1.

- 7 -

omitted). Prior to reaching the merits of a discretionary sentencing issue, this Court conducts a four-part analysis to determine:

> (1) whether [the] appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.[A] § 9781(b).

*Id*. (citation omitted).

In the instant case, Owens filed a timely post-sentence motion and a timely notice of appeal, and she included in her appellate brief a separate Rule 2119(f) statement. As such, she is in technical compliance with the requirements to challenge the discretionary aspects of her sentence. *See id*. Moreover, Owens's claim that the trial court failed to consider mitigating factors, in conjunction with her claim that the sentence was excessive, raises a substantial question. *See Commonwealth v. Velez,* 273 A.3d 6, 9 (Pa. Super. 2022), *appeal denied*, 283 A.3d 792 (Pa. 2022). Thus, we will consider the merits of Owens's challenge.

> Our standard of review of a discretionary sentencing claim is as follows:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008).

"The sentencing guidelines are purely advisory in nature—they are not mandatory. A court may therefore use its discretion and sentence defendants outside the guidelines, as long as the sentence does not exceed the maximum sentence allowed by statute." *Velez*, 273 A.3d at 10 (citations omitted). A court may depart from the guidelines to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. *See Sheller*, 961 A.2d at 190.

When imposing a sentence for a felony offense, the trial court must provide a statement of its reasons for a sentence imposed, and, when sentencing outside the guidelines, the court must provide its reasons for the deviation from the guidelines. *See* 42 Pa.C.S.A. § 9721(b). The court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. *See Commonwealth v. Taylor*, 277 A.3d 577, 593 (Pa. Super. 2022). However, when a PSI exists, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Conte*, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citation omitted). Nothing in the Sentencing Code, the sentencing guidelines, or the case law requires the trial court's statements to follow a particular form. *See id*. ("sentencers are under no compulsion to

employ checklists or any extended or systematic definitions of their punishment procedure"). Rather, the trial court's statement must show the court gave individualized consideration to the character of the defendant and stated appropriate reasons for deviating from the guidelines. *See id*.; *see also Sheller*, 961 A.2d at 191.

Furthermore, an appellate court shall vacate a sentence if it finds the trial court sentenced outside the sentencing guidelines and the sentence is "unreasonable." 42 Pa.C.S.A. § 9781(c)(3). When reviewing the record, this Court must have regard for:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

On appeal, Owens asserts the trial court "simply *refused* to take into consideration any evidence informing [the court of Owens's] character, personal history, and treatment and rehabilitative needs." Owens's Brief at 28.[8] Owens contends the trial court only emphasized the "negative

---

[8] Owens does not meaningfully challenge the trial court's discussion of the aggravating factors for sentencing outside the guidelines. *See* Owens's Brief at 28 (noting that "the trial court had every reason to be concerned about the nature of Ms. Owens'[s] criminal conduct and the impact that it had on the victims"). In a footnote, Owens takes exception to the trial court's suggestion
*(Footnote Continued Next Page)*

information" without commenting on the "mitigating evidence." *See id*. at 28-29. Owens acknowledges the trial court's review of a PSI gives rise to a presumption it considered all relevant sentencing factors; however, she asserts the presumption is rebuttable and should not apply when the trial court fails to mention any mitigating evidence. *See id*. at 27, 29-30.

The trial court considered Owens's claim it abused its discretion and explained its sentence was harsh but not unduly harsh. *See* Trial Court Opinion, 1/24/24, at 8. The court stated it considered the PSI and Owens's background. *See id*. The court emphasized its findings that: (1) Owens occupied positions of trust, both as a notary public and caretaker for Scruggs; Gordon and Scruggs were "elderly and extremely vulnerable[;]" and Owens did not appear to take the matter seriously. *Id*. The court concluded that in light of Owens's conduct and cavalier attitude, the guidelines were insufficient

---

she did not adequately explain her absence from the hearing in August 2023 due to a medical condition. *See id*. at 28 n.4. Specifically, to the extent the court found her explanation lacking due to the lack of corroborating documents, Owens contends blame for failing to procure such corroboration falls with counsel, not Owens herself. *See id*. However, Owens did not object at sentencing, raise this claim in her post-sentence motion, or attempt to supplement her post-sentence motion with any documentation to corroborate her excuse for failing to appear at the August 2023 hearing or attempts to contact her counsel. Therefore, this issue is waived. *See generally Durazo*, 210 A.3d at 319-20 ("Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed") (citation omitted). To the extent the court considered Owens's failure to appear in terms of her lack of seriousness, we note the court also referred to information in the PSI that Owens had failed to respond promptly to other bench warrants in Beaver County. *See* N.T., 9/20/23, at 10, 13.

to punish her and adequately protect other vulnerable members of society from her predatory behavior. **See id**.

Following our review, we discern no merit to Owens's discretionary sentencing issue. Here, the trial court considered the necessary section 9781 factors, including the nature and circumstances of the offense, as well as Owens's history and characteristics. **See** 42 Pa.C.S.A. § 9781(d)(1); N.T., 9/20/23, at 13. The court had ample opportunity to observe Owens when accepting her plea and at sentencing, where Owens and Owens's counsel highlighted Owens's mitigating circumstances and the court had the benefit of a PSI. **See** 42 Pa.C.S.A. § 9781(d)(2). The court stated it reviewed the PSI, and its comments and questions at the sentencing hearing confirmed the court's awareness of relevant factors regarding Owens's background. **See** N.T., 9/20/23, at 2-3, 9-11. Moreover, the court expressed its understanding of the guidelines, noted the guidelines were inadequate, and offered findings to support its upward deviation. **See id**. at 9-11, 13. Those findings reflected consideration of the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it related to the impact on the life of the victim and the community. **See id**. at 9-11, 13; 42 Pa.C.S.A. § 9721(b). The fact that the court's findings focused on the negative aspects of Owen's history and characteristics—*i.e.*, her apparent lack of remorse and failure to understand the seriousness of her crime—does not establish an abuse of discretion. **Cf**. **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa.

Super. 2009) ("The sentencing court merely chose not to give the mitigating factors as much weight as Appellant would have liked . . ..  We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court").  Based on this record, we cannot conclude that the sentence was unreasonable.[9]

Although Owens emphasizes the trial court did not discuss mitigating evidence or its consideration of mitigating evidence, a court's statement at sentencing does not require such detail.  **See Conte**, 198 A.3d 1177; **Sheller**, 961 A.2d at 191.  Moreover, the cases Owens cites, and the related decisional law, do not support Owens's claim that the trial court here improperly refused to consider mitigating evidence or inappropriately considered such evidence.  The trial court did not declare the mitigating evidence irrelevant to its sentence.  **See Eddings v. Oklahoma**, 455 U.S. 104, 113-14 (1982); **accord Commonwealth v. Losch**, 535 A.2d 115, 121 (Pa. Super. 1987) (holding the trial court erred in finding irrelevant the defendant's positive behavior in jail

---

[9] We acknowledge that the intended deviation from the guidelines for receiving stolen property appears substantial when measured against the high-ends of the standard and aggravated ranges of the guidelines.  Using a prior record score of five, the eighteen-month minimum sentence is double the nine-month high-end of the standard range, and one-and-one-half times the twelve-month high-end of aggravated range.  Having reviewed the record, however, we cannot conclude that the trial court's decision to sentence nine months over this standard range, or six months over this aggravated range was unreasonable or so disproportionate to the nature of the circumstances surrounding the offense, as well as Owens's history and characteristics, as to warrant resentencing.  **See** 42 Pa.C.S.A. § 9781(c), (d); **cf**. **Commonwealth v. Williams**, 69 A.3d 735, 742 (Pa. Super. 2013).

- 13 -

after sentencing and before resentencing). The trial court, as noted above, did not focus solely on the seriousness of the offense. *See Commonwealth v. Ritchey*, 779 A.2d 1183, 1189 (Pa. Super. 2001); *Commonwealth v. Ruffo*, 520 A.2d 43, 48 (Pa. Super. 1987). Lastly, this is not a case where the factors cited by the trial court for its deviation from the sentencing guidelines did not support the sentence, *see Commonwealth v. McCain*, 176 A.3d 236, 243 (Pa. Super. 2017), or contradicted information in the PSI, *see Commonwealth v. Masip*, 567 A.2d 331, 336 (Pa. Super. 1989). For these reasons, we conclude the trial court's failure to mention Owens's mitigating evidence does not, under the circumstances of this case, rebut the presumption the trial court meaningfully considered all relevant factors upon its review of the PSI. Thus, finding no basis to conclude that the sentence was unreasonable, or that the trial court improperly refused to consider mitigating evidence, Owens is due no relief on her challenge to the discretionary aspects of the sentence.

Although not raised by Owens, our review reveals a separate sentencing issue. Here, the trial court imposed the agreed upon amount of restitution of $62,798.28, but did not state the method of payment at the sentencing hearing. *See* N.T., 9/20/23, at 5-6, 12-13. This Court has held that the trial court's failure to specify the method of paying restitution at the time of sentencing renders a sentence illegal. *See Commonwealth v. Royal*, 312 A.3d 317, 326 (Pa. Super. 2024); *see also* 18 Pa.C.S.A. § 1106(c)(2)(ii)

(stating that "[a]t the time of sentencing the court shall specify the amount and method of restitution" and "[m]ay order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just"). Accordingly, while we affirm the carceral and probationary sentences imposed in this case, we are constrained to vacate the judgment of sentence in part and remand for resentencing limited to an on-the-record specification of the method of paying restitution. **See Royal**, 312 A.3d at 326; **Commonwealth v. Muhammed**, 219 A.3d 1207, 1211-12 (Pa. Super. 2019) (noting this Court may review, *sua sponte*, the legality of a sentence).

Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/02/2024

- 15 -