J-S14038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW LEWIS RAMAGE | : | |
| | : | |
| Appellant | : | No. 1032 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 29, 2025
In the Court of Common Pleas of Centre County
Criminal Division at No. CP-14-CR-0000551-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:           **FILED: MAY 28, 2026**

Andrew Lewis Ramage (Appellant) appeals from the judgment of sentence imposed after he entered an open *nolo contendere* plea to aggravated indecent assault of a child, 18 Pa.C.S. § 3125(b).[1] We affirm.

Appellant entered his plea on January 17, 2025. The trial court explained:

> At the time of the plea, a factual basis was set forth on the record, which was as follows:
>
> > [I]f the case had proceeded to trial, competent evidence would have shown that on or about January 22, 2023, [Appellant] was caring for his girlfriend's 12-month-old daughter, [Child]. After waking up in the night, the girlfriend discovered that [Child's] vagina showed signs of injury. Subsequent evaluation by physicians revealed multiple tears in the internal anatomy of [Child's] vagina,

---

[1] Pursuant to the plea agreement, the Commonwealth agreed to *nolle prosse* Appellant's charges of rape of a child, indecent assault, and simple assault. 18 Pa.C.S. §§ 3121, 3126, and 2701.

consistent with something being forcefully and repeatedly being inserted into her vagina.

Roughly two months later, on or about March 26, 2023, [Appellant] made statements to various health care providers and representatives of law enforcement confessing to have sexually assaulted [Child]. Specifically, [Appellant] made statements that after removing [Child's] diaper, he removed his penis from his own clothing with the intention of using it to penetrate [Child's] vagina. However, when he could not get an erection, he instead repeatedly inserted two fingers into her vagina.

Trial Court Opinion (TCO), 9/10/25, at 1-2 (citing N.T., 1/17/25, at 5-6).

At the conclusion of the plea hearing, the trial court ordered a Pre-Sentence Investigation (PSI) report and a report from the Sexual Offenders Assessment Board (SOAB). *See* N.T., 1/17/25, at 14. The court also directed the parties to submit pre-sentence memoranda. *Id.*

The trial court held a sentencing hearing on April 29, 2025. The Commonwealth presented Dr. Nancy Clemens as their sole witness. Dr. Clemons was Child's treating physician at Geisinger Medical Center, and the parties stipulated to her expertise in pediatric emergency medicine. N.T., 4/29/25, at 7-8.

Dr. Clemens described her examination of Child as "unusual." *Id.* at 8. She explained:

This examination was unusual for several reasons. One, I received a call from the community advocacy center saying that they required a child to come to the emergency department for examination. [They] stated that they thought she needed sedation for the exam, which was odd to me[, b]ecause the community advocacy center examines children, that's their primary role, or that's something they do on a daily basis, they examine children. [They] specialize in examining children for

concerns for trauma. So with this child's age and their experience I was surprised that they were not able to examine her.

The other reason the exam was unusual is because [Child] was very young. … I never had to sedate a child that age that I can recall to examine their genitals. And when I attempted to examine her in a typical pattern … she became hysterical. I remember … we could not instruct her or position her in a way that would allow me to [conduct] an effective exam.

When we laid her down to examine her I remember she almost … flew off the table. She retracted away from me. She was very hysterical.

This is an age a child is … happy when people change their diaper several times a day. It is not unusual for [a child] this age to have someone [near] their [genital] area. And so typically you just lay them down on their back … like they were having a diaper changed.

*Id.* at 8-10.

Dr. Clemens explained that Child was sedated because it was "clearly important to get a full and appropriate look at this child's genital region." *Id.* at 10. She relayed that she "had the subspecialist come from gynecology," and they "examined [Child] together." *Id.* at 10-11. Dr. Clemens testified:

[T]here were abnormalities, obvious abnormal findings. Most obvious was that her hymen was red, swollen, [and] appeared irritated with signs of injury. There were abrasions and then there were small tears in the hymen itself. …

[T]here is also documentation of an abrasion further above the vaginal opening. Like an area that was red and looked like it had been injured as well.

*Id.* at 11-12.

Appellant did not present any witnesses, but read a prepared statement. Appellant maintained he "never hurt" Child, and that a "sequence of events led to" him to "making a false confession of guilt." *Id.* at 22. Appellant

claimed his confession was a result of "intrusive thoughts" caused by obsessive compulsive disorder and anxiety. *Id.* He described delusions and paranoia which "played into making a false confession to police." *Id.* at 23. According to Appellant, he "never acted out physically in anger," and "loved [Child] like she was [his] own." *Id.* at 24. Appellant stated that he and Child's mother "broke up because of something completely unrelated to the case." *Id.* He added that Child's mother was "a very light sleeper, especially when it came to [Child]," and if Appellant "had actually done this," Child "would have woken [Child's mother, who] would have noticed then." *Id.* Appellant told the court that he entered his plea because he "wanted to reduce the charges and possibly face less jail time." *Id.* at 25.

The Commonwealth requested a maximum sentence, asserting that "everything in this case says [Appellant] is beyond an aggravated sentence." *Id.* at 18. The Commonwealth specifically requested the court "impose the statutory maximum of 10 to 20 years." *Id.* at 20. In contrast, defense counsel asserted that Appellant had confessed "while in the middle of a mental health crisis," and requested a "sentence at the bottom of the mitigated range as a minimum of 36 months." *Id.* at 19, 21.

The trial court reviewed the terms of Appellant's plea, noting Appellant's lifetime classification as a Tier III sex offender under the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S. § 9799.11.[2] *Id.* at 26.

_____

[2] The SOAB determined that Appellant was not a sexually violent predator.

- 4 -

The court further explained that pursuant to the plea, it would "take the facts as the Commonwealth would have proven." *Id.* at 30. Before announcing Appellant's sentence, the court said it had reviewed the PSI report and pre-sentence memoranda, and had considered Dr. Clemens' testimony, Appellant's statement, and counsels' arguments. *Id.* The court explained:

> The [c]ourt has considered [Appellant's] character, education, mental health and other circumstances set forth in the PSI and will incorporate the PSI into the record.
>
> The [c]ourt has considered the sentencing guidelines and finds they are not appropriate for the incident [in this] case and will sentence [Appellant] outside the guidelines for the following reasons.
>
> One[, Child] at the time of the incident was a 12-month-old baby who had no ability to call for help, defend herself or report the abuse.
>
> Two, [Appellant] took [Child] from her crib, took her into a separate room, removed [Child's] diaper and forcefully repeated[ly] forced his finger into [Child's] vagina, causing a tear to [Child's] vagina which required treatment in the emergency room. The injury was immediately obvious to [Child's] mother when she changed [Child's] diaper.
>
> Three, [Child] suffered extreme pain and [Appellant] inflicted substantial harm to the defenseless [Child] during this offense.
>
> Four, [Appellant] was in a caretaking role of [Child] at the time of the offense and had been a father figure to her since birth.
>
> Five, [Appellant's] apparent motivation for this brutal attack was anger and revenge against [Child's] mother[, h]is paramour, for a dispute they had earlier that day.
>
> The [c]ourt does find that the circumstances of the case require a maximum sentence to ensure the safety of the public. The [c]ourt further finds that a lesser sentence would depreciate the seriousness of this offense and the lifelong impact on [Child], as well as compromise the safety of the public.

The sentence imposed by the [c]ourt is consistent with and will be consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of [Child, and the] rehabilitative needs of [Appellant].

*Id.* at 30-32.

The trial court sentenced Appellant to 10 to 20 years of incarceration, followed by a mandatory three years of probation, *id.* at 32-33, and issued a contemporaneous written statement which reiterated the reasons for the sentence as follows:

1. The victim at the time of the incident was a 12-month-old baby, a preverbal infant who had no ability to call for help, defend herself or report the abuse.

2. [Appellant] took the baby from her crib and took her into a separate room. He removed the baby's diaper and forcefully and repeatedly inserted his finger into the baby's vagina, causing a tear to the baby's vagina which required treatment in the Emergency Room. The injury was immediately obvious to the baby's mother when she changed the baby's diaper.

3. The victim suffered extreme pain and [Appellant] inflicted substantial harm to the defenseless baby during the offense.

4. [Appellant] was in a caretaking role of the victim at the time of the offense and was a father figure to her since birth.

5. [Appellant] suggested that he was upset with the victim's mother, his paramour, prior to the offense, indicating anger or revenge as the motivation for the assault.

Statement of Reasons for Sentence Pursuant to 42 Pa.C.S. § 9721(b), 4/29/25.

On May 7, 2025, Appellant filed a post-sentence motion seeking to modify his sentence. The trial court held a hearing on June 11, 2025, and denied the motion on July 1, 2025. On July 29, 2025, Appellant filed a notice

of appeal, followed by a court-ordered concise statement on September 2, 2025.[3]

Appellant presents the following question for review:

Was the sentence of 10 to 20 years of incarceration an abuse of the lower court's discretion as it relied on impermissible reasons to impose a sentence substantially exceeding the aggravated range of the sentencing guidelines[?]

Appellant's Brief at 5.

Appellant claims the trial court "did not state sufficient reasons for [the] upward departure from [the] sentencing guidelines." *Id.* at 18. He argues his sentence is unreasonable "because it fails to make room for a harsher sentence for those committing this crime who committed other crimes, [and] who were deemed sexually violent predator[s]." *Id.* at 20. In addition, he asserts the trial court "myopically focus[ed] on this undeniably horrendous but singular criminal incident … based in part on its speculation as to the degree of pain suffered at the time and future suffering by [C]hild." *Id.* at 25. Appellant states:

The court's justification that [C]hild was defenseless as being 12 months old and in the care and custody of [Appellant] at the time of the aggravated indecent assault are inarguably reasons which would support a sentence in the aggravated range of the sentencing guidelines. Using this factor to exceed the aggravated

---

[3] Although Appellant filed his concise statement approximately one week late, we review the merits of the appeal because the trial court addressed Appellant's issue in its September 10, 2025 opinion. ***See Commonwealth v. Brown***, 145 A.3d 184, 186 (Pa. Super. 2016) (stating, "where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need not remand but may address the issues on their merits." (citation omitted)).

range and impose the longest permissible sentence was an abuse of discretion as the incident was by all accounts an aberration in the care he had given [C]hild in the preceding 12 months.

*Id.* at 26 (citation omitted).

The Commonwealth counters that the sentence was within the trial court's discretion and should not be disturbed. *See* Commonwealth Brief at 9. The Commonwealth states that a "wide spectrum of conduct may warrant the law's maximum punishment," and "here, the nature of Appellant's offense *compels* it." *Id.* (citations omitted, emphasis in original).

Appellant challenges the discretionary aspects of his sentence. To reach the merits of a discretionary sentencing claim, we must determine:

(1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code .... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)).

Appellant has filed a timely notice of appeal, preserved his claim in a post-sentence motion, and included a Rule 2119(f) statement in his brief. *See* Appellant's Brief, at 15-19. He has also raised a substantial question. *See* *Commonwealth v. Guth*, 735 A.2d 709, 711 (Pa. Super. 1999) (finding claim that the sentence was outside the guidelines and unreasonable raised a substantial question). We thus consider the merits of Appellant's argument.

Our standard of review is well-settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Durazo*, 210 A.3d 316, 320 (Pa. Super. 2019) (citations omitted). Sentencing courts must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). The "balancing of these Section 9721(b) sentencing factors is within the sole province of the sentencing court." *Commonwealth v. Velez*, 273 A.3d 6, 9–10 (Pa. Super. 2022) (citation omitted).

Here, the facts are similar to those in *Durazo*, where the appellant challenged the discretionary aspects of the 10 to 20 year sentence imposed after he pled guilty to aggravated assault of his girlfriend's infant son. *Durazo*, 210 A.3d at 318. In affirming the appellant's sentence, this Court noted that "the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it [is] not bound by the Sentencing Guidelines." *Id.* at 320 (citations omitted). We also observed that the court "may depart from the guidelines 'if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the

defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community.'" *Id.* (citation omitted).

When this Court reviews a sentence outside of the guidelines, the essential question is whether the sentence is reasonable. *Id.* at 321. In determining whether the sentence is reasonable, we consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

*Id.* (quoting 42 Pa.C.S. § 9781(d)).

In this case, the trial court recognized that Child's age and the circumstances of the offense "are already addressed in the offense gravity score." TCO at 4. The court also acknowledged Appellant's claim that it speculated about Child experiencing "extreme pain and … substantial harm during the offense." *Id.* The court explained:

> While the [c]ourt referenced [Child's] age and the circumstances of the offense, those were not the sole or even overarching reasons on which the [c]ourt relied in fashioning the sentence. The [c]ourt relied on all of the information contained within the Pre-Sentence Investigation report, the agreed upon factual basis, the testimony of [Child's] treating physician, and all other required factors for fashioning a sentence.
>
> Regarding [Child's] age, the [c]ourt specifically noted that [C]hild was a preverbal infant who had no ability to call for help, defend herself, or report the abuse. [Appellant's] choice to offend against such a vulnerable victim is wholly relevant to the protection of the public and the gravity and impact of the offense as it relates to

- 10 -

this specific victim. Notably, [Appellant's] own sentencing memorandum sought to rely on [Child's] age in support of his contention that he should receive a mitigated sentence because of his belief that [Child] is unlikely to remember the assault.

While … the elements of the offense are accounted for in the offense gravity score, the individualized circumstances of a case are not. Here, the [c]ourt relied on [Appellant's] motive of anger or revenge against [Child's] mother, and [his] clandestine efforts to assault [C]hild while performing his caretaking role of a father figure to [C]hild.

The record before the [c]ourt supports that [Child] had vaginal tearing and the injury was immediately obvious to [C]hild's mother when she changed [C]hild's diaper. In addition to the physical harm, [Child] must live with the lifelong impact of being violated in such an egregious manner at such a young age.

*Id.* at 4-5.

The trial court did not abuse its discretion. Similar to **Durazo**, the record indicates that the trial court properly considered the evidence and law when it sentenced Appellant to serve 10 to 20 years of incarceration for aggravated indecent assault of a child.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/28/2026