J-S35039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC LYNN VARNER | : | |
| | : | |
| Appellant | : | No. 1 MDA 2024 |

Appeal from the Judgment of Sentence Entered December 7, 2023
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000137-2022

BEFORE:  PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY KING, J.:　　　　　　　**FILED: JANUARY 24, 2025**

Appellant, Eric Lynn Varner, appeals from the judgment of sentence entered in the Huntingdon County Court of Common Pleas, following his jury trial convictions for endangering the welfare of a child ("EWOC") and recklessly endangering another person ("REAP").[1]  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> [Appellant] is a U.S. citizen … [and] Charmis Maines, who was [Appellant's] paramour for a time, was born and raised in the Republic of the Philippines.  In January 2020, while Ms. Maines was still in the Philippines, they began their relationship by telephone.  Eventually, Ms. Maines came to the U.S. to live with [Appellant] at his home….  The two have a son together, Z.L.V., who was born in 2021.  On January 23, 2022, when Z.L.V. was nine months old, Pennsylvania State Police [("PSP")] troopers were dispatched to

---

[1] 18 Pa.C.S.A. §§ 4303(a) and 2705, respectively.

[Appellant's] home after Ms. Maines called 911 out of concern that [Appellant] was suicidal. PSP corporal Jonathan Thomas was one of the officers who responded, and in the course of his interview with Ms. Maines, she disclosed to him concerns she had with [Appellant's] treatment of Z.L.V., including videos she had taken of such treatment. As a result of the contact [Appellant] was transported to the hospital for an evaluation … and a child abuse investigation was initiated based on Ms. Maines' disclosures.

The child abuse investigation was assigned to PSP criminal investigators, Paul Brenneman and Robert Colton, who conducted their investigation in coordination with the Huntingdon County Children and Youth Services agency. The videos were captured by Ms. Maines in a multi-step process. The sound and imagines were originally captured by a baby monitor placed in Z.L.V.'s room, over the top of his crib. The baby monitor itself does not have a record function, and Ms. Maines then re-recorded the videos on her tablet by playing the videos on her cell phone and recording them with the camera on the tablet. She made recordings from three dates, December 23, 2021, January 7, 2022, and January 9, 2022. The tablet was taken into custody as evidence by the troopers. Based on the content of the recordings, [Appellant] was charged with multiple child abuse offenses….

…[Appellant] filed a[n] omnibus pretrial motion on August 18, 2022, seeking suppression of the videos on the basis that they were obtained in violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S [§§ 5701-5782] (the "Wiretap Act"). Specifically, [Appellant] claimed that Ms. Maines' actions violated [Section] 5703 of the Wiretap Act, and her actions did not fall into the "crime of violence" exception under [Section] 5704(17) of the Wiretap Act.

It must be noted that Ms. Maines' first language is Tagalog, and that while she can speak and understand English well enough to "get by," her ability to communicate and express herself in English is imperfect. Because of this, [a Tagalog interpreter was required for the hearing on Appellant's suppression motion]. The hearing was held on January 4,

2023. The Commonwealth presented testimony from Ms. Maines and Trooper Brenneman. Because of the particular dialect of Tagalog that Ms. Maines speaks, the interpretive process was quite difficult, and her testimony came off as quite stilted and limited. Regardless, the [trial] court was able to make findings of fact and rule on the suppression motion, denying it [on] January 31, 2023.

\* \* \*

[Appellant] was brought to trial before a jury on September 18, 2023. Just prior to trial, the Commonwealth moved to withdraw a number of lesser charges, which was granted. The final charges on which [Appellant] was brough to trial are as follows: [Count 1: aggravated assault, 18 Pa.C.S.A. §2702(a)(8), F2; Count 7: EWOC-parent commits the offense, 18 Pa.C.S.A. § 4304(a)(1), F2; Count 8: REAP, 18 Pa.C.S.A. §2705, M2.]

\* \* \*

The court prepared charge specific jury instructions for each count based on the Pennsylvania Standard Jury Instructions. These were provided to counsel before trial and discussed on the record after the close of the Commonwealth's case, outside the hearing of the jury. [Appellant] did not raise issues with regard to the instructions on Count 1 and 8, but did raise an issue with Count 7.

On Count 7, the court drafted the instruction under the "course of conduct" theory, which ties with the sentencing enhancements set forth in 18 Pa.C.S.[A.] §4304(b)(1)(ii) and (iv). The draft instructions further included a special interrogatory to the jury regarding whether, if [Appellant] was found guilty on Count 7, the endangerment created a "substantial risk of death or serious bodily injury." [Appellant] argued that because the Commonwealth had charged the offense as a felony of the second degree, the Commonwealth could only proceed on an "all or nothing" basis, and could not seek the possibility of conviction on a lesser degree of the offense. The Commonwealth disagreed, and offered to amend the information to add the lesser degree as a separate count. [T]he court overruled

- 3 -

[Appellant]'s objection on the instruction….

After deliberation, the jury acquitted [Appellant] on Count 1 and convicted him on Counts 7 and 8. On the special interrogatory, the jury found that the endangerment did not create a substantial risk of death or serious bodily injury.

A little over a week after trial, [Appellant] contacted the clerk of courts, requesting that [the docket sheet be corrected] to show that [Appellant] was convicted of endangering the welfare of a child as a misdemeanor, rather than a felony of the second degree. When informed that the grading was correct based on the orders entered by the court, [Appellant] sent a letter to the court by facsimile, setting forth why he believed the record needed to be corrected with respect to the offense grading. The court elected to treat the letter as a motion for extraordinary relief, and notified the parties of the same….

Sentencing occurred on December 7, 2023. After hearing argument from the parties, the court denied [Appellant's] motion for extraordinary relief and kept the offense grading on Count 7 as a felony of the second degree. It then sentenced [Appellant] as follows: [EWOC- 36-120 months' incarceration; REAP- 6-24 months' incarceration]. The sentences were run consecutively, for a[n aggregate] sentence of 42-144 months' incarceration. The court expressly acknowledged on the record that it was sentencing outside of the sentencing guidelines, and delineated its reasons for doing so.

(Trial Court Opinion, filed 2/26/24, at 1-6) (citations omitted).

On Monday, December 18, 2023, Appellant filed a timely post-sentence motion, which the court denied on December 19, 2023. Appellant filed a timely notice of appeal on December 29, 2023. On January 4, 2024, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on January 23, 2024.

Appellant raises the following issues for our review:

> Did the trial court commit an error of law in denying [Appellant's] request for suppression of video evidence pursuant to 18 Pa.C.S. § 5721.1 in finding that the recorder had reasonable suspicion to suspect that a "crime of violence" had occurred to trigger the "crime exception" pursuant to 18 Pa.C.S. § 5704(17)?
>
> Did the trial court err as a matter of law in determining that [EWOC] should be graded as a felony of the second degree by finding that the grading enhancements under 18 Pa.C.S. §§ 4304(b)(1)(ii) and 4304(b)(2) were proven beyond a reasonable doubt when the jury was instructed under § 4304(b)(1)(iv) after the Commonwealth failed to inform the court or defense counsel that it was not seeking a conviction under that subsection?
>
> Did the trial court abuse its discretion by failing to note sufficient reasoning or cause on the record for a sentence that exceeded the aggravated range as set forth by the sentencing guidelines?

(Appellant's Brief at 2-4).[2]

In his first issue, Appellant contends that the recordings Ms. Maines took of Appellant were in violation of the Wiretap Act. Appellant argues that Ms. Maines' testimony at the suppression hearing failed to establish that she reasonably believed Appellant was likely to injure Z.L.V., so the crime of violence exception to the Wiretap Act did not apply here. Appellant notes that Ms. Maines expressly testified that she did not see Appellant get physical with Z.L.V. Additionally, Appellant asserts that Ms. Maines, who testified that she

---

[2] Appellant includes a fourth issue in his statement of questions presented but states in the argument section that the issue is not being pursued on appeal. (*See id.* at 21). Thus, we do not include the issue here or discuss it further.

would have sought medical attention for Z.L.V. if she believed the child had been injured, did not seek medical attention for Z.L.V. after the incidents she recorded. Appellant claims that Ms. Maines' testimony that she was concerned about Appellant's actions breaking the child's bones was insufficient because "no testimony was provided to justify [Ms. Maines'] belief that broken bones would occur." (*Id.* at 18). Appellant asserts that the court erroneously inferred that Ms. Maines had reason to believe that Appellant was about to engage in conduct that was likely to cause Z.L.V. serious bodily injury. Appellant concludes that the court erred in finding that the recordings were admissible pursuant to the crime of violence exception to the Wiretap Act, and this Court should reverse the order denying Appellant's motion to suppress. We disagree.

The following principles govern our review of an order denying a suppression motion:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to

determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

This Court has explained that the Wiretap Act

is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these otherwise illegal practices and their derivative fruits may be used.

*Commonwealth v. Glass*, 200 A.3d 477, 483 (Pa.Super. 2018), *appeal denied*, 654 Pa. 507, 216 A.3d 226 (2019).

The Wiretap Act provides the following exception, which allows law enforcement to utilize wiretaps without obtaining prior judicial approval:

**§ 5704. Exceptions to prohibition of interception and disclosure of communications**

It shall not be unlawful and no prior court approval shall be required under this chapter for:

*   *   *

(17)    Any victim, witness or private detective licensed under the act of August 21, 1953 (P.L. 1273, No. 361), known as The Private Detective Act of 1953, to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from

the interception.

18 Pa.C.S.A. § 5704(17) (footnote omitted). The Wiretap Act contains a definition for "crime of violence," which includes "aggravated assault as defined in section 2702(a)(1) or (2)." 18 Pa.C.S.A. § 5702(1)(ii).

Instantly, Ms. Maines testified at the suppression hearing that she was watching Appellant through the baby monitor in Z.L.V.'s room. She began to record the video feed with her tablet when she became concerned that Appellant "wasn't gentle in putting the baby down on the bed." (N.T. Suppression Hearing, 1/4/23, at 4). Specifically, Ms. Maines testified that Appellant was not being gentle and she was concerned that as a result, the child "might suffer some damage." (*Id.*) When asked to elaborate, Ms. Maines stated that she was worried that Appellant's actions would "damage [the child's] bones and his speaking" because the child "was only seven months" old at the time. (*Id.* at 5). She further stated that Appellant was talking in a loud voice and that his actions weren't "healthy for the newborn baby." (*Id*. at 6). When asked if Appellant was physical with the baby, she testified, "Not really." (*Id.*) Ms. Maines was testifying with the assistance of an interpreter and the interpreter stated on the record multiple times that he did not understand the specific word or verbiage that Ms. Maines was using.

Taking into account the difficulties in the translation process, the court concluded:

> The reasonable inference from [Ms. Maines'] statements is that Ms. Maines was concerned that the degree of physical

> force and violence to which [Appellant] was subjecting Z.L.V. could result in broken bones (and related injuries). Such injuries fit squarely within the definition of "serious bodily injury," as required to qualify as aggravated assault for the crime exception. Therefore, the court finds that the Commonwealth has established that Ms. Maines reasonably suspected that by recording the audio and video feed from the baby monitor on her tablet, she would obtain evidence that [Appellant] was about to commit, was committing, or had committed … aggravated assault against Z.L.V.

(Findings of Fact and Opinion, filed 1/31/23, at 12-13).

The record supports the court's findings. Ms. Maines testified that she started recording Appellant because she observed him handling Z.L.V., who was only seven months old at the time, in a rough manner. She further indicated that Appellant was raising his voice and handling Z.L.V. in such a way that she was fearful that the child would sustain damaged bones. Given the child's young age and extreme vulnerability to harm, we disagree with Appellant's position that Ms. Maines had to see Appellant act physically violent with Z.L.V. in order to be reasonably concerned that the incident would escalate to a situation where the child would be seriously injured. Additionally, the trial court, who had the opportunity to observe the witness and the translation process, attributed any discrepancies in Ms. Maines' testimony as to the degree of physicality Appellant exhibited towards Z.L.V., to the "extremely limited and frustrating" translation process. (*Id.* at 12). Under the totality of the circumstances, we agree with the court that it was reasonable for Ms. Maines to be concerned that Appellant was about to commit

a crime of violence against the child when she started recording.[3]  **See** 18 Pa.C.S.A. § 5702(1)(ii); 18 Pa.C.S.A. § 5704(17).  Because the record supports the suppression court's conclusions, and its legal conclusions were correct, Appellant is not entitled to relief on his first issue.  **See Ford, supra**.

In his second issue, Appellant argues that in the information, the Commonwealth charged Appellant with EWOC under 18 Pa.C.S.A. § 4304(a)(1), which is generally graded as a first-degree misdemeanor. Appellant notes that the information charges Appellant with EWOC graded as a second-degree felony but does not indicate which grading enhancement the Commonwealth intended to apply to increase the grading.  Appellant claims

_____

[3] The court did not view the videos in question prior to ruling on Appellant's suppression motion.  Having since viewed the videos, the court notes that they provide further support to Ms. Maines' testimony that Appellant was behaving in a concerningly, aggressive manner immediately prior to the start of the recording.  The court describes the content of the videos as follows:

> Briefly, they show Z.L.V. in his crib, crying, while [Appellant] takes actions in an attempt to force Z.L.V. to be quiet and go to sleep.  On the mild end, [Appellant] repeatedly screams at Z.L.V., at the top of his lungs to "shut up," "go to sleep," "go the fuck to sleep," etc.  At one point, despite obviously knowing that Z.L.V. is hungry, [Appellant] screams, "You're not getting any food you fucking fatass." [Appellant]'s actions are not only verbal though.  He repeatedly uses his hands to force Z.L.V. to lay flat on the mattress and shoves Z.L.V. into the mattress facedown.  At one point, [Appellant] slaps Z.L.V. on the buttocks in an apparent attempt to spank him, and at another he forcibly shoves a pacifier into Z.L.V.'s mouth while Z.L.V. is crying. On one occasion he literally slams Z.L.V. onto the mattress.

(Trial Court Opinion at 3 n.1).

that because the Commonwealth never specified its theory for the increased grading, Appellant and the court presumed that the Commonwealth was proceeding under the grading enhancement set forth in 18 Pa.C.S.A. § 4304(b)(1)(iv), which increases the offense to a second-degree felony if Appellant's actions created a substantial risk of death or serious bodily injury and was part of a course of conduct.

Appellant acknowledges that the Commonwealth generally indicated during the charging conference that the grading would be increased one level due to the age of the victim. Nevertheless, Appellant argues that the Commonwealth failed to specify that it intended to apply the grading enhancement set forth in Section 4304(b)(2), which increases the grading of the offense if the victim is less than six years old. As such, Appellant insists that he had no notice that the Commonwealth intended to seek the age enhancement. Appellant further asserts that the sentence imposed for the EWOC conviction was illegal pursuant to ***Apprendi v. New Jersey***, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the issue of whether the victim was below the age of six was not submitted to the jury. Appellant concludes that the court erred in grading his EWOC conviction as a second-degree felony, and this Court should vacate the judgment of sentence and remand for resentencing as a first-degree misdemeanor. We disagree.

"A challenge to the legality of sentence is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v.***

*Hayes*, 266 A.3d 679, 683 (Pa.Super. 2021).

> A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Likewise, a sentence that exceeds the statutory maximum is illegal. If a court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction.

*Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa.Super. 2013) (internal citations and quotation marks omitted).

Pennsylvania Rule of Criminal Procedure 560 provides, in relevant part, that a criminal information is sufficient if it contains "a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint." Pa.R.Crim.P. 560(B)(5). "[T]he charging instrument must include those elements to put the defendant on notice of the crime." *Commonwealth v. King*, 660 Pa. 482, 503-04, 234 A.3d 549, 562 (2020). "[A] fact increasing the statutory maximum … must be treated as an element." *Id.* at 502, 234 A.3d at 561. Rule 560 further provides that "[t]he information shall contain the official or customary citation of the statute and section thereof, or other provision of law that the defendant is alleged therein to have violated; but the omission of or error in such citation shall not affect the validity or sufficiency of the information." Pa.R.Crim.P. 560(C).

"Informations must be read in a common sense manner and are not to

be construed in an overly technical sense.  The purpose of the information is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act." **Commonwealth v. Bickerstaff**, 204 A.3d 988, 995 (Pa.Super. 2019), *appeal denied*, 655 Pa. 509, 218 A.3d 862 (2019) (citation omitted).  "Variations between allegations and proof at trial are not fatal unless a defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right." **Id.**

Additionally, in **Apprendi**, the United States Supreme Court determined that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  **Apprendi, supra** at 490, 120 S.Ct. at 2362-63.  The Court further explained that "the 'statutory maximum' for **Apprendi** purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." **Cunningham v. California**, 549 U.S. 270, 283, 127 S.Ct. 856, 865, 166 L.Ed.2d 856 (2007). Accordingly, this Court has concluded that there is no **Apprendi** violation when the court imposes a sentence based on facts that the defendant has admitted.  **See Commonwealth v. Johnson**, 961 A.2d 877, 881-82 (Pa.Super. 2008), *appeal denied*, 600 Pa. 774, 968 A.2d 1280 (2009).

Moreover:

> [I]t has long been the rule in this Commonwealth that

- 13 -

counsel represent their client and their admissions are *prima facie* his admissions. Certainly so even in criminal cases when made in his presence and to the jury. In trials for felony, admissions of fact which the government is bound to prove are not permitted unless made at the trial in open court by the prisoner or his counsel.

*Id.* at 882 (citations and quotation marks omitted).

Instantly, the criminal information charged Appellant with EWOC, citing 18 Pa.C.S.A. § 4304(a)(1). Section 4304 provides, in relevant part:

**§ 4304. Endangering welfare of children**

**(a) Offense defined.—**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

\* \* \*

**(b) Grading.—**

(1) Except as provided under paragraph (2), the following apply:

(i) An offense under this section constitutes a misdemeanor of the first degree.

(ii) If the actor engaged in a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

(iii) If, in the commission of the offense under subsection (a)(1), the actor created a substantial risk of death or serious bodily injury, the offense constitutes a felony of the third degree.

(iv) If the actor's conduct under subsection (a)(1) created a substantial risk of death or serious bodily

injury and was part of a course of conduct, the offense constitutes a felony of the second degree.

(2) The grading of an offense under this section shall be increased one grade if, at the time of the commission of the offense, the child was under six years of age.

* * *

18 Pa.C.S.A. §4304.

Here, the court determined that the information was sufficient because it adequately put Appellant on notice of the Commonwealth's intention to seek the grade enhancement set forth in Section 4303(b)(2). The court explained:

The criminal information graded [the EWOC charge] as a felony of the second degree. This left only two possibilities for the precise offense the Commonwealth was alleging occurred. The first is that [Appellant] committed the offense by engaging in a course of conduct that created a substantial risk of death or serious bodily injury, as set forth in [Section] 4304(b)(1)(iv). The second was that [Appellant] committed the offense by engaging in a course of conduct and the Commonwealth proved that Z.L.V. was under six years of age, as set forth between the combination of [Sections] 4304(b)(1)(ii) and 4303(b)(2).

(Trial Court Opinion at 13).

We agree with the court's analysis. The Commonwealth specified in the information that it was charging Appellant with EWOC as a second-degree felony. This put Appellant on notice that the Commonwealth intended to seek the grade enhancements set forth in Section 4304(b) which would result in the charge being graded as a second-degree felony. *See* Pa.R.Crim.P. 560(C). *See also King, supra*.

Regarding Appellant's claim that the court imposed an illegal sentence

in violation of **Apprendi** by grading the EWOC charge as a second-degree felony, the trial court acknowledges that it did not submit the question of whether the victim was below the age of six to the jury. However, the court did not violate **Apprendi** because the court based the grade of the EWOC conviction on Appellant's admissions through his counsel. Appellant's counsel repeatedly referred to Z.L.V. as "the baby" throughout the trial. During his closing argument, Appellant's counsel stated twice that the child was seven months old at the time of the incident. (**See** N.T. Defense Closing Argument, 12/18/23, at 2, 7). Through counsel's statements, Appellant admitted on the record in the presence of the jury that the child was below the age of six at the time of the incident. **See Johnson, supra** (holding that **Apprendi** was not violated when the trial court graded conviction based on facts that appellant's counsel admitted during closing argument in the presence of jury).[4] Based on Appellant's admission, the court properly applied the Section

_____

[4] Appellant cites to **Commonwealth v. Kearns**, 907 A.2d 649 (Pa.Super. 2006) to support his claim. In **Kearns**, the trial court sentenced the appellant for involuntary manslaughter graded as second-degree felony. This Court noted that involuntary manslaughter can only be graded as a second-degree felony if the victim is under 12 years of age and is in the care, custody or control of the person who caused the death. Pursuant to **Apprendi**, this was a factual determination that must either be admitted by the defendant or found by a jury beyond reasonable doubt. Because the issue of the victim's age and whether the victim was in the appellant's custody was neither submitted to the jury nor admitted by the appellant, this Court concluded that the trial court violated **Apprendi** in grading the involuntary manslaughter conviction as a second-degree felony. This case is distinguishable and more factually analogous to **Johnson**. In **Johnson**, the appellant claimed that the
*(Footnote Continued Next Page)*

4304(b)(2) enhancement and graded the EWOC conviction as a second-degree felony.[5] **See** 18 Pa.C.S.A. 4304(b). Accordingly, the court did not impose an illegal sentence, and Appellant is not entitled to relief on his second issue.

In his third issue, Appellant asserts that the court imposed consecutive sentences for Appellant's convictions that were beyond the aggravated range of the recommended sentencing guidelines. Appellant claims that the court focused solely on the severity of the offense and failed to consider or discuss how the sentence was appropriate for the protection of the public or Appellant's rehabilitative needs. Appellant further contends that the court ignored mitigating factors such as Appellant's statement of remorse and his history of mental health issues. Appellant concludes that the court abused its discretion in imposing an excessive sentence, and this Court should vacate the judgment of sentence. We disagree.

---

court violated **Apprendi** in grading his intimidation of a witness conviction as a first-degree felony. The intimidation conviction could be graded as a first-degree felony if the underlying case in which the witness or victim was involved had a charge of murder. This Court determined that the court's grading of the offense was appropriate because the appellant's counsel, during closing arguments, admitted in the presence of the jury that the victim is a witness for a murder trial. Here, Appellant's counsel admitted during his closing argument that Z.L.V. was under the age of six at the time of the offense. As such, this case is more akin to **Johnson**.

[5] The court instructed the jury regarding course of conduct as a required element for finding Appellant guilty of EWOC. The jury convicted Appellant of EWOC, thereby finding that Appellant engaged in a course of conduct that endangered the welfare of a child, as set forth in Section 4304(b)(1)(ii).

As presented, Appellant's claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Leatherby*, 116 A.3d 73, 82-83 (Pa.Super. 2015) (explaining arguments that defendant received excessive sentence and court failed to articulate reasons for sentence implicates discretionary aspects of sentencing). "Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S. Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an

appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." ***Phillips, supra*** at 112 (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa.Super. 2003). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*) (quoting ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super. 2011)).

Instantly, Appellant timely filed his notice of appeal, he preserved his sentencing issue by including it in his post-sentence motion, and his appellate brief includes a Rule 2119(f) statement. Appellant's claim also raises a substantial question as to the appropriateness of the sentence imposed. ***See Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa.Super. 2008), *appeal denied,* 602 Pa. 666, 980 A.2d 607 (2009) (concluding that substantial question may exist where appellant contends that sentencing court exceeded recommended range in sentencing guidelines without providing adequate

basis). Accordingly, we proceed to address the merits of Appellant's issue.

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

"When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* When considering the propriety of a sentence that falls above the guideline ranges, but below the statutory maximum, this Court has noted:

> When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it [is] not bound by the Sentencing Guidelines. The court may deviate from the recommended guidelines; they are merely one factor among many that the court must consider in imposing a sentence. A court may depart from the guidelines if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the

- 20 -

gravity of the particular offense as it relates to the impact on the life of the victim and the community. When a court chooses to depart from the guidelines, however, it must demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Further, the court must provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. The requirement that the court provide a contemporaneous written statement is satisfied when the judge states his reasons for the sentence on the record and in the defendant's presence.

***Commonwealth v. Durazo***, 210 A.3d 316, 320–21 (Pa.Super. 2019) (internal citations and quotation marks omitted).

Instantly, the court sentenced Appellant to 36 to 120 months' incarceration for EWOC and 6 to 24 months' incarceration for REAP, to run consecutively. The court acknowledged on the record that it was imposing a sentence that was above the aggravated range of the sentencing guidelines and explained its reasoning as follows:

> …[I]t is my duty to consider when I impose sentence the protection of the public and the gravity of your offenses as they relate to the impact on the life of the victim and on the community and I also need to consider your rehabilitative needs. I need to consider the sentencing guidelines. I need to consider the statements made by counsel today, your statement and, of course, the presentence investigation [("PSI")] and I certainly have considered all of those things.
>
> [Defense counsel] indicated that you are remorseful. I think you're remorseful. I think you're remorseful for yourself and that's the only person you're remorseful for. You're not remorseful for that little baby. You know, sitting up here year after year you get very hardened by the horrific crimes that people commit and the things you see on a daily basis to the point that a lot of it doesn't even affect me. When I saw that video, I was as close to crying on the bench than I ever was. It was that awful. And the first time I saw that

- 21 -

when we did a pretrial hearing, I looked around the courtroom and there were people crying. I just cannot believe that a human being can do that to any child, let alone their own child.

The hero in this case is the mother of that child who almost seemed to be a captive in her own home because she didn't speak the language. She had nowhere to turn. I can't imagine being her. Her flesh and blood dealing with this, the tone of your voice, what was going on, it was just awful and she had to live with that.

I appreciate the fact that you have problems. I appreciate the fact that you're a veteran but can you imagine every case, all the sentencings I do today if somebody said, hey Judge, cut me a break. I got a B-12 deficiency. We talk records. You said it's kind of generally diagnosed I think you said in the presentence. It's not an official diagnosis is what I read. I've seen nothing to say that you have mental health issues. How you can do that to your son? It's absolutely awful.

I'm also considering – I'm thinking about the people that wrote the sentencing guidelines for the charge of [EWOC] and there is no way that they could have ever considered this crime, the crime you committed, with other cases similar that are also endangering the welfare of children. That's why I don't think the guidelines in this case are appropriate. I don't think the people who wrote the sentencing guidelines could have ever conceived of hearing your voice and listening as you were pounding that child into that mattress.

And the brain of a 7-month-old looking up knowing that this is one of the two people in the world who can protect me and doing that to this child. The helplessness of the victim is a factor in my sentence. This is a 7-month-old. The age of this victim and the helplessness of the mother and what she had to endure and do to get this case to the State Police, it's just violence that's almost unbelievable and that's what it is. It's violence committed on your own child.

(N.T. Sentencing Hearing, 12/7/23, at 16-18).

- 22 -

Contrary to Appellant's assertions, the court did not ignore Appellant's statement of remorse or his mental health struggles. The court found that Appellant's statement failed to demonstrate a sincere expression of remorse to the victim. Rather, Appellant's statement focused on the difficulties in his own life in an attempt to excuse his actions and the consequences Appellant has since faced because of his actions. The court also acknowledged Appellant's health issues, including his claims of mental health struggles. The court merely noted that Appellant did not document an official mental health diagnosis, which correlates with the information provided in the PSI report.

Additionally, the court explained its reasoning for deviating from the sentencing guidelines. The court noted the level of aggression and violence Appellant exhibited towards his own child, who Appellant has a duty to nurture and protect. The court noted the severe impact Appellant's actions had and will continue to have on the extremely helpless and vulnerable seven-month-old child and Ms. Maines, who has difficulty communicating in English and had limited resources to seek help for her child. The court also noted the emotional impact Appellant's actions had on individuals in the courtroom who merely saw the video of Appellant's actions. The court further considered Appellant's lack of remorse and failure to take accountability. The court found that the facts of this case went beyond the facts of a typical EWOC conviction and what was contemplated by the sentencing guidelines for this offense. The record reflects that the court considered Appellant's rehabilitative needs but

ultimately concluded that a sentence above the aggravated range was required to reflect the gravity and seriousness of the offense. **See Durazo, supra.** Therefore, the court did not abuse its discretion in imposing a sentence that deviated from the sentencing guidelines. **See McNabb, supra**. Accordingly, Appellant is not entitled to relief on any of his issues on appeal and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/24/2025</u>